IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| PDC LABORATORIES, INC., an Illinois corporation, | |
| Plaintiff, | Case No. 1:09-cv-01110-MMM-BGC |
| v. | |
| HACH COMPANY, a Delaware corporation, | Judge: Michael M. Mihm<br>Magistrate Judge: Byron G. Cudmore |
| Defendant. | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT SEEKING TO LIMIT
PLAINTIFF'S CLAIMS FOR CONSEQUENTIAL DAMAGES AND
OTHER DAMAGES BEYOND THE AMOUNTS PAID FOR THE GOODS**

Defendant, Hach Company ("Hach"), through its counsel, respectfully submits this Reply in support of its Motion for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56 seeking to limit Plaintiff PDC Laboratories, Inc.'s ("PDC") claims for consequential damages and other damages in excess of the amounts paid by PDC to Hach for the allegedly defective goods at issue in this case:

**INTRODUCTION**

The issue presented by Hach's Motion is straightforward: Should PDC be bound by the Terms and Conditions governing PDC's online purchase of m-TEC Modified Agar Plates (the "Plates") from Hach? The answer is yes. Because these Terms and Conditions prohibit PDC's claims for damages in excess of the amounts PDC paid for the Plates, summary judgment should thus be granted on these claims.

PDC tries to get around the clear language in the Terms and Conditions by arguing that these provisions are procedurally and substantively unconscionable. But there is nothing unconscionable

about holding PDC, a commercial laboratory and a repeat customer of Hach, to the terms of its contract with Hach. Through conspicuously displayed blue hyperlinks featured on multiple web pages in the ordering process —including an entire step of the 5-step ordering process dedicated to "Review[ing[ Terms" — PDC was provided meaningful opportunities to review Hach's Terms and Conditions before completing its order. PDC never objected to any of the Terms and Conditions. Moreover, far from being unconscionable, the limitation of remedies provision in Hach's Terms and Conditions is commercially reasonable, and is expressly permitted under Colorado law.

PDC has established no question of material fact as to why the damages limitation in Hach's Terms and Conditions should not apply. PDC's claims for damages exceeding the purchase price of the Plates are thus barred as a matter of law, and Hach's Motion should be granted.

## REPLY TO ADDITIONAL MATERIAL FACTS

**1.      Undisputed Material Facts**

Nos. 2-16; 18-28.[1]

**2.      Disputed Material Facts**

No. 1: The packaging on the Plates, an example of which is attached to the Complaint as Exhibit B, speaks for itself. Hach notes that the packaging states that the expiration date "is valid for storage at 2 degrees – 8 degrees C[elsius]," lists the "Shelf Life at 2 – 8 degrees C[elsius]" as "1 year." (Complaint, Ex. B.)

No. 17: Hach objects to Fact No. 17 on the ground that it is a legal conclusion, not a fact. As discussed below in the Argument section, Hach disputes that PDC had no reason to know that the Plates had been overheated.

---

[1] The majority of these "facts" are outside Hach's knowledge. Given that no discovery has yet been done in the case, Hach reserves the right to dispute these allegations at a later date. For purposes of this Motion, however, Hach does not dispute any of these assertions.

2

# ARGUMENT

A. **Hach's Terms and Conditions of Sale are Binding on PDC as Part of the Sales Contract.**

PDC argues that Hach's Terms and Conditions of Sale are procedurally unconscionable and thus void. This argument is based solely on PDC's allegation that PDC did not have sufficient notice of Hach's Terms and Conditions when it completed its order. PDC's argument fails as a matter of law. The undisputed facts demonstrate that the Terms and Conditions were conspicuously provided to PDC at three different points during its online purchase of the Plates. Under these circumstances, the Terms and Conditions are part of the sales agreement, and PDC is bound by these provisions as a matter of law.

Courts addressing this issue have consistently held that online terms and conditions that are sufficiently conspicuous to the purchaser are binding as a matter of law. *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121-22 (Ill. App. 5th Dist. 2005) (where online purchasers were provided "sufficient notice" of terms and conditions, those terms and conditions were binding as a matter of law); *Wigginton v. Dell, Inc.*, 890 N.E. 2d 541 (Ill. App. 5th Dist. 2008) (citing *Hubbert* approvingly and applying that reasoning to conclude that a phone purchase was *not* governed by terms and conditions that were provided to the customer only after the purchase had been completed); *Druyan v. Jagger*, 508 F. Supp 2d 228, 237 (S.D.N.Y. 2007) (concluding, on a motion to dismiss, that Defendant's terms of use provided through hyperlinks were "sufficiently conspicuous to be binding on the plaintiff as a matter of law," and noting that "the enforceability of the Terms of Use does not depend on [plaintiff] actually having read them.")

In *Hubbert*, the Fifth District Appellate Court of Illinois concluded that the online contract included the terms and conditions at issue where a blue hyperlink to the terms and

conditions "appeared on numerous Web pages the plaintiffs completed in the ordering process." 835 N.E. 2d at 121. The *Hubbert* court correctly reasoned:

> The blue hyperlinks on the defendant's Web pages, constituting the five-step process for ordering the computers, should be treated the same as a multipage written paper contract. The blue hyperlink simply takes a person to another page of the contract, similar to turning the page of a written paper contract.

*Id.* The court noted that the website included a statement that all sales were subject to the terms and conditions, but only in further support of its conclusion that the plaintiffs were on notice of the terms and conditions. *Id.* at 122.

The *Hubbert* court went on to overturn the trial court's ruling that the arbitration clause at issue was procedurally unconscionable. *Id.* at 124. Because the hyperlinks to the terms and conditions "were in a contrasting blue color," and the language relating to the arbitration provision on the linked terms and conditions page highlighted in bold, capital letters, the court concluded the provision was sufficiently conspicuous and valid. *Id.*

The Fifth District Appellate Court of Illinois applied the same reasoning in *Wigginton v. Dell*, 890 N.E.2d 541, 545-46 (Ill. App. 2008), but reached a different result based on the different circumstances at issue.[2] In *Wigginton*, the court found that the terms and conditions were procedurally unconscionable based on the fact that the purchase was made over the telephone (rather than online), and the purchaser had been given no opportunity to see the terms and conditions until after purchasing the product. The court noted that these facts were completely different than the circumstances at issue in *Hubbert*, where blue hyperlinks to the terms and conditions found on multiple web pages in the ordering process sufficiently "put

---

[2] Contrary to Plaintiff's suggestion that *Wigginton* called in question the relevant holding of *Hubbert*, the *Wigginton* court's analysis is entirely consistent with *Hubbert*.

consumers on notice that there were terms and conditions that they should inquire about before completing the purchase." *Id.* at 545.

Here, as in *Hubbert* and *Druyan*, Hach provided PDC ample notice of the Terms and Conditions of Sale that governed the online transaction. Just as in *Hubbert*, the Terms and Conditions of Sale were provided to PDC via highlighted blue hyperlinks in multiple web pages as part of the ordering process. (Young Aff. ¶ 6.) First, when PDC entered the items it was purchasing, a link to the "Standard Terms and Conditions of Sale" appeared on the "View Order" form highlighted in bold, underlined, and in bright blue test. (Young Aff. ¶ 7, Ex. 1.) Next, an entire step of the five-step ordering process was titled: "Step 4: Review Terms, add any comments, and submit order." (*Id.* ¶ 8, Ex. 2.) This screen also provided a link to the "Standard Terms and Conditions" in highlighted blue text. (*Id.*) The Terms and Conditions were provided to PDC a third time after PDC had completed the purchase. (*Id.* ¶ 9, Ex. 3.) This screen, titled "Secure Order Confirmation," again presents a link to the "Standard Terms and Conditions of Sales" in highlighted blue text. (*Id.*) Significantly, PDC does not deny that it saw the Terms and Conditions during the ordering process. (*See generally* Earhart Aff.) Under these circumstances, there is no question that PDC was provided "sufficient notice" of the Terms and Conditions and is thus legally bound by them. *See, e.g., Hubbert*, 835 N.E.2d at 121-22; *Druyan*, 508 F. Supp 2d at 237 (S.D.N.Y. 2007).

PDC's attempt to distinguish *Hubbert* and *Druyan* on the ground that the online order forms at issue in those cases used slightly different language is unpersuasive. Contrary to PDC's suggestion, neither *Hubbert* nor *Druyan* — nor any other court — has ever ruled that an online ordering form must specifically state that "all sales are subject to the Terms & Conditions" in

5

order for those provisions to be binding. There is no such magic phrase. Rather, in analyzing whether terms and conditions provided through hyperlinks as part of an online purchase are legally binding, courts consider whether the purchaser is provided sufficient notice of the terms and conditions, such that it should reasonably expect to be bound by them. That test is easily met here.

PDC's reference to "clickwrap" cases is another red herring. "Clickwrap" cases involve online purchases where the customer is required to click a button prior to completing its order expressly accepting the terms and conditions proposed by the seller. As PDC correctly observes, in "clickwrap" cases, courts have held (unsurprisingly) that terms and conditions to which the purchaser expressly has assented are binding. The "clickwrap" cases cited by PDC have no bearing on this case, which is a "browsewrap" case. In "browsewrap" cases, such as *Hubbert* and *Druyan*, the online ordering process by definition does not include any button regarding the terms and conditions. As discussed above, courts routinely uphold Terms and Conditions in "browsewrap" cases where the purchaser has sufficient notice of those provisions. *See, e.g., Hubbert*, 835 N.E.2d at 121-22; *Druyan*, 508 F. Supp 2d at 237 (S.D.N.Y. 2007).

PDC was provided ample notice of Hach's Terms and Conditions as part of its online purchase of the Plates. As a matter of law, these Terms and Conditions govern PDC's sales contract with Hach.

**B.     The Limitation of Damages Clause in Hach's Terms and Conditions is Valid.**

Colorado law provides that, in contracts for the sale of goods, the parties may limit "the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts . . . ." as long as the remedy does not "fail of its essential

purpose." Colo. Rev. Stat. § 4-2-719(1)(a) & (2). In addition, Section 4-2-719(3) specifically permits parties to agree to limit or exclude consequential damages unless the limitation or exclusion is unconscionable.

As PDC acknowledges, the damages limitation provisions found in Hach's Terms and Conditions of Sale expressly bar PDC's claims for consequential damages and other damages beyond the $5,898.71 PDC paid for the Plates. (Young Aff., Ex. 4.) The Terms and Conditions provide:

> **REMEDIES:** If Seller breaches any warranty provided to the Buyer, and if the Buyer notifies Seller of such breach within 30 days following the end of the warranty period applicable thereto, Seller shall, at its option, either replace or repair the nonconforming goods or refund all amounts paid by the Buyer to Seller for such goods. THIS IS THE EXCLUSIVE REMEDY FOR ANY BREACH OF WARRANTY. The sole purpose of this remedy is to provide the Buyer with the repair or replacement of goods or, at Seller's option, to refund the price paid by the Buyer hereunder. This remedy shall not be deemed to have failed of its essential purpose so long as Seller is willing to take of these actions.
>
> **DAMAGES:  IN NO EVENT SHALL SELLER BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND, WHETHER FOR BREACH OF ANY WARRANTY, FOR BREACH OR REPUDIATION OF ANY OTHER TERM OR CONDITION OF THIS AGREEMENT, FOR NEGLIGENCE, ON THE BASIS OF STRICT LIABILITY, OR OTHERWISE.**

(Young Aff., Ex. 4.)

PDC attempts to escape this contractual damages limitation by arguing that the remedy of the return of the cost of the Plates "fails of its essential purpose, and the waiver of the consequential damages in the Terms & Conditions is unconscionable." (Response at p. 10.) PDC has failed to establish that there is a material question of fact as to whether the remedies

7

agreed to by the parties failed of its essential purpose. Accordingly, PDC's claims for consequential damages and other damages beyond the total amount it paid for the Plates are barred as a matter of law, and summary judgment should be granted to Hach on these damages claims.

Generally, "the failure of essential purpose exception applies only to those situations in which the buyer is left without a remedy." *Wenner Petroleum Corp. v. Mitsui & Co.,* 748 P.2d 356, 357 (Colo. App. 1987). A limited remedy fails of its essential purpose only "if it deprives a party of the substantial benefit of the bargain." *Curragh Queensland Mining Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 241 (Colo. App. 2002). The classic example of a limited remedy failing of its essential purpose is when a seller is unwilling or unable to repair the defective goods within a reasonable period of time. *See, e.g., Cooley v. Big Horn Harvestore Systems, Inc.,* 813 P.2d 736 (Colo 1991) (upholding trial court's ruling that repair or replace remedy failed of its essential purpose where defendants failed to repair or replace the product with an adequate non-defective product); *Curragh*, 55 P. 3d 235 at 241 (holding that a reasonable fact finder could conclude that the contract's limited repair remedy had failed of its essential purpose where sellers were unsuccessful in their attempts over a seven-year period to cure the product's defects); *James J. White & Robert S. Summers*, Uniform Commercial Code § 12-10 (5th ed. 2008) (The most "frequent application" of the failure of essential purpose exception is where seller is "unwilling or unable to repair the defective goods" within a reasonable period).

The other circumstance where Colorado courts have sometimes ruled that a limitation of remedy to return of the purchase price fails of its essential purpose is when the goods at issue have latent defects which are not discoverable upon receipt and reasonable inspection. *See, e.g.,*

8

*Leprino v. Intermountain Brick Co.*, 759 P.2d 835 (Colo. App. 1988) (applying failure of essential purpose doctrine where defect in bricks was latent and could not have been discovered until after the bricks had been installed); *Lutz Farms v. Asgrow Seed Co.*, 948 P.2d 638 (10th Cir. 1991) (upholding district court's ruling that limitation of remedy to purchase price failed of its essential purpose where latent defects in onion seeds caused most of the crop to be destroyed).

The failure of essential purpose doctrine has no application to this case: the limitation of remedy at issue here does not deprive Hach of the benefit of its bargain. There is no allegation by PDC that Hach failed or refused to repair, replace, or provide a refund for the Plates at issue. (*See., e.g.,* Complaint & Earhart Aff.) Nor is this a situation where there was a latent defect that PDC could not have discovered upon receipt and reasonable inspection of the Plates in August 2007. As PDC concedes, there was no defect in the Plates; the Plates used by PDC in November or December 2007 "did not appear to be defective." (Earhart Aff. ¶ 14.) It was only the Plates that were used by PDC in May 2008 — *i.e.*, nine months after PDC's receipt of the Plates — that showed no growth of *E. coli* bacteria. (*Id.* ¶ 16.)

PDC's claim in this case is not that there was a latent defect in the Plates, but rather that the Plates "had been overheated" during shipping and thus were not useable for the one year stated on the packaging. (*See, e.g.,* Additional Material Facts Nos. 16-18.) This one-year expiration date, however, was expressly conditioned on the Plates being stored at "2 – 8 degrees Celsius." (Compl. ¶ 17, Ex. B; Response at p. 16.) The invoices attached to PDC's Complaint reveal a gap of several days between the time the Plates were shipped to PDC by Hach via FedEx Overnight and FedEx Ground, and when PDC marked "receipt" of the invoices in its Florissant, Missouri office. (Compl. ¶ 15, Ex. A.) This gap of time itself was sufficient to put PDC on

9

notice that the Plates may have been subjected to excessive heat (typical of a St. Louis August) for a prolonged period of time, and thus the Plates might not be useable <u>nine months</u> after their receipt.  Moreover, pursuant to Hach's Terms and Conditions of Sale, PDC agreed that it would "bear all risk of loss or damage in transit." (Young Aff., Ex. 4.)  The burden was on PDC to confirm that the Plates were still functioning nine months after their receipt before using these Plates on an important project with, as PDC points out, "public health and safety repercussions." (Response at p. 16.)  There is simply no legal or factual basis to apply the failure of essential purpose exception to allow PDC to escape the agreed-upon damages limitation.

Nor is there any merit to PDC's claim that the damages limitation is unconscionable.  "In order to support a finding of unconscionability, there must be evidence in the record of some overreaching on the part of one of the parties." *Leprino*, 759 P.2d at 836.  There is no allegation, much less any evidence of overreaching or unequal bargaining power between the powers.  PDC is hardly unsophisticated or powerless; it is a commercial laboratory and a repeat customer of Hach.  Under these circumstances, there can be no finding of unconscionability.  *See, e.g., Leprino*, 759 P.2d 837 (rejecting trial court's conclusion that the damages limitation clause was unconscionable with respect to the latent defect in the bricks because "[t]here was no evidence or finding of inequality of bargaining power or of overreaching on the part of defendant.")

The bottom line is that Hach is merely a supplier of test plates.  Hach and PDC, two businesses in the same industry, entered into a sales contract governed by the Terms and Conditions.  These Terms and Conditions clearly limit Hach's responsibility and liability to repair or replacement of the Plates, or return of the purchase price, if the Plates are defective.  This is a standard provision that is intended to ensure that potentially huge liabilities are not

transferred to the supplier, who has no understanding of the specific purposes for which the Plates are to be used. Hach's Terms and Conditions effectively shift the burden to the ultimate user to ensure that the Plates are in good condition and remain functional if they are intended to be used for an important purpose. Colorado law expressly permits parties to agree to such an allocation of loss. Hach cannot be held responsible for unknown consequential damages, and it would in fact be unconscionable to impose consequential liability when the Terms and Conditions expressly disavow such liability.[3]

PDC has failed to establish that there is material question of fact as to whether the damages limitation in the Terms and Conditions of Sale is invalid. Accordingly, the Court should uphold the damages limitation, and grant summary judgment on PDC's claims for consequential damages and other damages beyond the total amount it paid for the Plates.

**WHEREFORE**, for the reasons set forth herein, Hach respectfully requests that the Court grant summary judgment in favor of Hach and against PDC on PDC's claims for consequential damages and other damages in excess of the total amounts paid by PDC for the allegedly defective goods.

---

[3] As observed by *White & Summers* in its discussion of § 2-719:

> [P]arties, better than the state, can allocate the loss to the one who can avoid it at the least cost. The state's agents should respect that allocation. This is particularly true when a knowledgeable buyer is using an expensive machine or consuming a commodity in a business setting. It is the buyer who operates the machine, adjusts it, and understands the consequences of its failure. Sometimes flaws are inherent and attributable to the seller's faulty design or manufacture. But the fault may also lie in buyer neglect, inadequate training and supervision of the operators, failure to report difficulties, or even in intentional use in ways forbidden by the seller. Believing the parties to know their own interests best, we favor their allocation.

Uniform Commercial Code § 12-10 (5th ed. 2008).

11

        HACH COMPANY, a Delaware corporation, Defendant

        By:   *s/Gregory A. Cerulo*

Gregory A. Cerulo (Illinois Bar No. 6184006)
QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
227 N.E. Jefferson Street
Peoria, IL  61602-1211
Telephone:  (309) 674-1133
Facsimile:  (309) 674-6503
E-mail: Gcerulo@qjhpc.com
Attorney for Hach Company

Of Counsel:
N. Reid Neureiter
Kathryn A. Reilly
JACOBS CHASE FRICK KLEINKOPF AND KELLEY
1050 17th Street, Suite 1500
Denver, CO 80265
Phone:  (303) 892-4438
Fax:     (303) 685-4869

## PROOF OF SERVICE

I hereby certify that on June 11, 2009, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**Brian J. Meginnes**
bmeginnes@emrslaw.com,vicki@emrslaw.com

**Janaki Hannah Nair**
jnair@emrslaw.com

I also hereby certify that on   n/a  , 2009, I served a copy of the foregoing document on the following at the respective business addresses below by deposit in the U. S. Mail, postage prepaid, at Peoria, Illinois:

None.

                                              *s/Gregory A. Cerulo*
                                              Gregory A. Cerulo (Illinois Bar No. 6184006)
                                              QUINN, JOHNSTON, HENDERSON, PRETORIUS & CERULO
                                              227 N.E. Jefferson Street
                                              Peoria, IL  61602-1211
                                              Telephone:  (309) 674-1133
                                              Facsimile:  (309) 674-6503
                                              E-mail: Gcerulo@qjhpc.com