# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| PDC LABORATORIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 09-1110 |
| HACH COMPANY, | ) |
| Defendant. | ) |

## O R D E R

This matter is now before the Court on Defendant, Hach Company's ("Hach"), Motion for Partial Summary Judgment Seeking to Limit Plaintiff's Claims for Consequential Damages and Other Damages Beyond the Amounts Paid for the Goods. For the reasons set forth below, the Motion for Partial Summary Judgment [#6] is GRANTED in part and DENIED in part.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the claims asserted in the Complaint establish diversity jurisdiction. Plaintiff, PDC Laboratories, Inc. ("PDC"), is an Illinois corporation with its principle place of business in Illinois. Defendant, Hach, is a Delaware corporation with its principle place of business in Colorado. The amount in controversy exceeds $75,000.

**FACTUAL BACKGROUND**

In August 2007, PDC purchased eighty-six packages of m-TEC Modified Agar Plates (the "Plates") from Hach through several online orders. The Plates cost PDC a total of $5,898.71 and were to be used to detect *E. coli* in recreational waters. A one year express warranty was written on the Plates which required that they be stored between 2 and 8 degrees Celsius. PDC asserts that the Plates were placed into a refrigerator upon receipt from the carrier in keeping with their practice. PDC began using the Plates to analyze river water samples for an environmental contractor, MEC Water Resources, Inc. ("MEC"). During their use in the months of November and December in 2007, the Plates appeared to function properly.

The Plates were next used to test additional river water samples, provided by MEC, that were gathered from sampling during storm events in May, 2008. After using 148 of the Plates, no growth of *E. coli* occurred. PDC then tested the remaining Plates and found that they would not produce *E. coli* growth even when exposed to waste water known to contain *E. coli*. This led PDC to the conclusion that the Plates were defective. Hach was notified of this and performed their own testing on the Plates. Hach also concluded that the Plates were not functioning properly, but claimed that the defect was due to overheating during the shipping process because the Plates were not defective when manufactured. PDC has claimed damages in excess of seventy-five thousand dollars stemming from the use of the Plates.

On February 4th 2009, PDC filed this suit alleging a breach of express warranty, implied warranty of merchantability, and implied warranty of fitness for a particular purpose

1:09-cv-01110-MMM-BGC   # 11   Page 3 of 13

in the Circuit Court for Peoria County, IL. Hach then removed the case to this Court based on diversity jurisdiction, and PDC did not object. Hach has now moved for partial summary judgment. The matter is fully briefed, and this Order follows.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. Celotex, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict

for the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995). Included in the Terms was the agreement that disputes arising under the Plate contract would be resolved using Colorado law. PDC does not contest the use of Colorado law due to the fact that there is no significant conflict or difference between Colorado and Illinois law in this area. Therefore, the Court will apply Colorado law.

## DISCUSSION

I.   <u>Inclusion of the Terms & Conditions of Sale in the Plate Sale Contract</u>

Hach argues that PDC agreed to the Terms & Conditions of Sale (the "Terms") document in the online order process for the Plates and is thereby bound by its terms. The Terms include a limitation of damages clause allowing only the recovery of the purchase price of the Plates, as well as allowing no warranties except the written express warranty provided by Hach. PDC argues that the Terms were not included due to the fact that they were not sufficiently conspicuous, and, therefore, their inclusion would be procedurally unconscionable.

According to the Colorado Uniform Commercial Code (the "Code"), if a court finds that a contract or any clause in a contract is unconscionable, the court may limit the application of the unconscionable clause, exclude the unconscionable clause from the contract, or refuse to enforce the contract entirely if it is found to be unconscionable. Colo. Rev. Stat. § 4-2-302 (West 2009). In order to decide if a contract is procedurally unconscionable, the court may consider factors which surround the creation of the contract such as how the contract was entered into, whether the parties had adequate time to read and understand the contract, whether important terms in the contract are conspicuous or

hidden in fine print, and other such considerations to ensure that a party is not deprived of a meaningful choice. Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co., 86 Ill. App. 3d 980, 989-990 (1st Dist. 1980).

The Code further provides that a term in a contract is conspicuous if it is presented in a manner "that a reasonable person against which it is to operate ought to have noticed it." Colo. Rev. Stat. § 4-1-201(b)(10) (West 2009). Examples of conspicuous presentation of a term include any means to set the term or the term's heading apart from nearby terms such as differing the term or heading's color, size, font, or other noticeable means of contrast. Id. In applying these Uniform Commercial Code standards of conspicuousness to cases involving online sales contracts, courts have found that terms and conditions of sale documents were sufficiently conspicuous when a blue hyperlink leading to them appeared several times during the order process. Hubbert v. Dell Corp., 359 Ill. App. 3d 976, 987 (5th Dist. 2005) (where the court found that terms and conditions linked in an online order process in blue hyperlink form were sufficiently conspicuous to bind the plaintiff).[1] Whether a party has actually read terms and conditions of sale documents does not affect their accent or the terms' enforceability.

When applying the law to PDC's claim that the Terms were not sufficiently conspicuous in the online Plate order form, the Court finds that the Terms were conspicuous enough to have been included and that such inclusion in the contract cannot be considered procedurally unconscionable. It is undisputed that the Terms were hyperlinked on three separate pages of the online Plate order process in underlined, blue,

---

[1] Colorado law is consistent with the holdings in Hubbert, which was cited by both parties in this case and is the leading authority in "hyperwrap" cases, such as the case now before the Court.

contrasting text. (Plaintiff's Response to Motion for Partial Summary Judgment p. 8, paragraph 7, argument). This contrasting text is sufficient to be considered conspicuous under Hubbert, even though the Terms are only linked three times instead of five times, because it is not the repetition of the display of a term that is determinative but the contrast of a term. Hubbert, 359 Ill. App. 3d at 987.  Further evidence of the Terms' conspicuousness is the fact that they were brought to attention by being specifically referenced in the final order step which read: "STEP 4 of 4: Review terms, add any comments, and submit order," and was followed by a hyperlink to the Terms. (Ex. A to Hach's Motion for Partial Summary Judgment). Though PDC does not state whether or not they read the Terms, it is inconsequential to the Terms' conspicuousness or PDC's accent thereto. See Druyan v. Jagger, 508 F. Supp. 2d 228, 237 (S.D.N.Y. 2007) (where the court found that the plaintiff was bound to online terms regardless of whether she actually read them).

    PDC incorrectly relies on various "clickwrap" cases which involve online sale orders where the purchaser is required to click or check a box in order to accent to the terms and agreements of the sale. See, e.g., Adsit Co., Inc. v. Gustin, 874 N.E.2d 1018, 1023 (Ind. App. 2007)("The user is required to take affirmative action by clicking on the 'I Accept' button; if the user refuses to agree to the terms, she cannot engage in the transaction") "Clickwrap" cases differ greatly from hyperlink cases by requiring the express action of clicking an acceptance during the course of an order. Based on these differences, the acceptance requirement of an affirmative action in "clickwrap" cases has no bearing on online order cases only involving hyperlinked terms, such as the case now before the Court.

Other contentions raised by PDC to show that the inclusion of the Terms in the Plates' sale contract would be procedurally unconscionable are unpersuasive. PDC claims that Hach was required to include language in the order process similar to the language from Hubbert that stated "[a]ll sales are subject to Dell's Term[s] and Conditions of Sale." Hubbert, 359 Ill. App. 3d at 984. However, PDC has cited no authority requiring such language, and the Court finds that no specific language is required by Colorado Uniform Commercial Code or applicable state law in order to attach terms to an online sale of goods. Additionally, PDC claims that because Hach did not deliver the Terms in hard copy with the Plates, PDC was not put sufficiently on notice. This claim was likewise unsupported by argument or case law. Another court addressing whether terms of sale were procedurally unconscionable found that providing terms of a sale in hard copy may be necessary for telephone orders because buyers are unable to view the terms of sale prior to ordering as one can in an online sales, but this case is inapposite here, as the order was not placed over the phone. Wigginton v. Dell, Inc., 382 Ill. App. 3d 1189 (5th Dist. 2008).

Accordingly, the Court finds that inclusion of Hach's Terms and Conditions of Sale in the Plates' sale contract is not procedurally unconscionable.

II.     Validity of the Terms' Limitation of Damages Clause

PDC next challenges the validity of the Terms' limitation of damages clause. To support this, PDC claims that the limitation of damages clause fails of its essential purpose. In the alternative, PDC alleges that the clause is substantively unconscionable based on the unequal bargaining power of the companies.

The Code provides that, "Remedies for breach of warranty can be limited in accordance with the provisions of this article on liquidation or limitation of damages and on contractual modification of remedy (sections 4-2-718 and 4-2-719)." Colo. Rev. Stat. § 4-2-316(4)(West 2009). The portion of the Code concerning limitation of damages is as follows:

> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable...

Colo. Rev. Stat. § 4-2-719(2) & (3)(West 2009).

An exclusive or limited remedy consisting of replacement, repair or refund for the purchase price of goods can fail of its essential purpose in two separate ways when those goods are found to be defective. First, when a contract limits remedy to repair or replacement of defective goods, the limited remedy fails of its essential purpose when either the goods are unable to be repaired or the seller is unwilling to make repairs or replace the goods within a reasonable amount of time. See, e.g., Cooley v. Big Horn Harvestore Systems, Inc., 813 P.2d 736 (Colo. 1991)(where the Court found that limitation of remedy to repair or replacement failed of its essential purpose when the seller was unable to repair and did not replace a grain distribution system within a reasonable time period). Second, when a contract limits remedy to return of the purchase price, the limited remedy fails of its essential purpose "when goods have latent defects which are not discoverable upon receipt and reasonable inspection." Leprino v. Intermountain Brick Co., 759 P.2d 835, 836 (Colo. App. 1988)(where a limited remedy to refund of purchase price

was found to have failed of its essential purpose when the defect was latent or not discoverable until after use and significant damages had occurred).

Hach argues that PDC is bound by the limited remedy clause found in the Terms, and, as a result, claims by PDC should have recovery limited to the purchase price of the Plates. PDC has not argued for the repair or replacement of the Plates but for the allowance of damages in excess of the purchase price of the Plates. Therefore, the question before the Court, concerning failure of essential purpose, only includes the limiting of recovery to the purchase price of the Plates and does not involve limiting remedy to repair or replacement. Based on this, the Court need not address the examples given by either party concerning failure of essential purpose where remedy is limited only to repair or replacement of defective goods, as it is the second option that is at issue here.

PDC argues that it should be allowed to seek damages in excess of the purchase price because the Plates failed in their essential purpose as a result of a latent defect that was undiscoverable at the time of purchase. Specifically, PDC claims that some the Plates functioned properly upon receipt and the first use but others were defective when used nine months later, making the alleged defect latent and undiscoverable prior to use even after a reasonable inspection.

In a similar case involving a product in which the defect could not be found until after use of the product, the Colorado Appellate Court found the defect to be latent and that the limitation of damages to purchase price failed of its essential purpose. Leprino, 759 P.2d at 836. The court held that a purchaser of a consumable product is not required to consume that product to test for defects but only to perform a reasonable inspection. Id. In that case, "[The defect] was not apparent until... after installation. Under these

circumstances, limiting plaintiff's damages to the cost of the bricks would deprive plaintiffs of the substantial value of their bargain, and thus, the damages limitation clause here failed of its essential purpose." Id., at 837.

When construed in the light most favorable to PDC, two types of latent defects can reasonably be inferred from the record: (1) some plates within each package may have been defective upon manufacture, or (2) the Plates' outer protective packaging may have been defective, exposing some of the Plates to excessive heat during shipping. The first possibility is self-explanatory and subject to proof at trial. With respect to the second possibility, it is important to note that Hach controlled the Plates' packaging and selection of the shipping method. Hach has further admitted that it did not ship the Plates in a refrigerated compartment or attempt to keep the Plates cool during transport despite its knowledge that the Plates required storage between 2 and 8 degrees Celsius.[2]

Hach denies that there was any latent defect and maintains that if the Plates were damaged by heat during shipping that it is not liable. However, Hach's denial is not dispositive. Again, Hach had full control over the means of shipping and the method of packaging the Plates, while PDC controlled only the shipping speed of the Plates. Accordingly, PDC's assumption of the risk of damage during shipping does not absolve Hach of any possiblity of liability under either the manufacturing defect or defective packaging theory.

---

[2] (Hach's Reply in Support of the Motion for Partial Summary Judgment, p. 2, undisputed material fact 14 (Hach reserved the right to later dispute facts which were outside Hach's knowledge, which clearly excludes their own shipping practices)).

Hach's conclusion that it was the Plates' exposure to heat that caused some of them to not function nine months after the purchase is far from undisputed, and the Court has a duty to construe all disputed facts, as well as draw any reasonable inferences, in the light most favorable to PDC as the non-moving party. The responses and evidence proffered by Hach do not eliminate the possibility that some of the Plates or their packaging were defective or that the defect was latent or otherwise undiscoverable prior to use even after reasonable inspection. In the absence of undisputed evidence establishing that no reasonable jury could find that there was a latent defect in the Plates or their packaging, the Court cannot find that the limitation of damages clause did not fail of its essential purpose, and Hach is not entitled to judgment as a matter of law on this issue.

It would also appear that facts essential to this inquiry are not currently before the Court. For example, the record does not indicate the condition of the Plates' outer packaging. If the Plates' outer packaging was damaged, a reasonable jury could infer that this damage during shipping allowed the Plates to be exposed to heat and that there was no latent defect. That being said, if the Plates' outer packaging was not damaged in any way during shipping or if the packaging was insufficient to withstand Hach's chosen shipping method, then any heat damage caused during shipping could be considered the result of defective packaging and attributable to Hach.

Based on this record, a reasonable jury could find either that the Plates' were inherently defective or that their protective outer packaging was defective because it was unable to withstand Hach's chosen shipping methods. Id. (noting that a limited remedy can fail of its essential purpose as a result of the action or inaction of the seller). Under either theory, the Court finds a genuine issue of material fact requiring resolution at by a jury at

trial as to whether a latent defect existed and caused the limitation of damages clause to fail of its essential purpose. Summary judgment on this issue must therefore be denied.

PDC has also claimed that the limitation of damages clause is substantively unconscionable because of overreaching on the part of Hach and the parties' unequal bargaining power. This claim is supported by PDC's allegations that they were subjected to the Terms without adequate opportunity to read or bargain over the specific clauses. PDC relies on Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 850 (10th Cir. 1986), which states:

> "In order to support a finding of unconscionablity, there must be evidence of some overreaching on the part of one of the parties such as that which results from inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party."

(citation omitted). In Mullan, the court found that the terms were adequately conspicuous and therefore, the opportunity to read the terms was clearly present. Hach also provided PDC an opportunity and means to contest clauses in the Terms via the last step in the online order process which read: "STEP 4 of 4: Review terms, add any comments, and submit order."[3] Hach and PDC are both corporate entities which executed an online sales contract that shows no signs of overreaching on the part of either party. This argument is therefore without merit.

---

[3](Exhibit 1 to Removal, Complaint, Exhibit 2).

**CONCLUSION**

The undisputed evidence has established that the Terms, including the limitation of damages clause, were sufficiently conspicuous and not procedurally unconscionable, as well as that the limitation of damages clause was not substantively unconscionable due to a lack of unequal bargaining power and overreaching on the part of Hach. On the other hand, PDC has met its burden to show that, on the record before the Court, there is a material issue of fact as to whether the Plates had a latent defect which would cause the limitation of damages clause to fail of its essential purpose. Accordingly, this issue cannot be resolved on summary judgment.

For the foregoing reasons, Hach's Motion for Partial Summary Judgment [#6] is GRANTED in part and DENIED in part. This matter is referred to the Magistrate Judge for further proceedings.

ENTERED this 24th day of August, 2009.

                                            s/ Michael M. Mihm
                                            Michael M. Mihm
                                            United States District Judge